In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2326

James Newsome,

Plaintiff-Appellee,

v.

John McCabe and Raymond McNally,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 7680--Paul E. Plunkett, Judge.

Argued September 25, 2000--Decided July 11, 2001


  Before Flaum, Chief Judge, and Easterbrook
and Diane P. Wood, Circuit Judges.

  Easterbrook, Circuit Judge.  James Newsome
spent 15 years in prison for murder. The
killing and associated crimes (armed
robbery and armed violence) occurred in
October 1979. Newsome was arrested in
November 1979 when police, who were
holding him on other charges, noted his
resemblance to a composite sketch of the
person who in the course of a robbery
shot and killed Mickey Cohen. Newsome was
convicted of that crime in September
1980, see People v. Newsome, 110 Ill.
App. 3d 1043, 443 N.E.2d 634 (1st Dist.
1982); and his efforts to obtain
collateral relief were unavailing until
December 1994, when a state court vacated
his conviction. In 1995, after the
State's Attorney declined to put Newsome
on trial a second time, the Governor of
Illinois concluded that Newsome is
innocent and pardoned him. Newsome then
filed this suit under 42 U.S.C. sec.1983
against five officers of the Chicago
Police Department. He could not seek
damages for wrongful arrest and
detention; that claim accrued in 1979, so
the statute of limitations expired in
1981. See Gonzalez v. Entress, 133 F.3d
551 (7th Cir. 1998). But a claim based on
wrongful conviction and imprisonment did
not accrue until the pardon, see Heck v.
Humphrey, 512 U.S. 477 (1994), and
Newsome tried to take advantage of the

newly opened window for suit. Absolute immunity forecloses any action against the prosecutors and judges, but Newsome has tried to avoid that doctrine by suing the investigating officers, arguing that the police were complicit in a wrongful prosecution. He calls this a claim of "malicious prosecution" and contends that the police must pay for failing to halt the criminal prosecution. The defendants responded by arguing that Newsome's theory is legally deficient and that, at all events, qualified immunity prevents an award of damages.

The district judge granted summary judgment in favor of James W. Eckner, Bruce James, and David Dioguardi, ruling that the evidence of record could not be read to imply that they did anything wrong. 2000 U.S. Dist. Lexis 5678 (N.D. Ill. Apr. 25, 2000), reconsideration denied, 2000 U.S. Dist. Lexis 6929 (May 16, 2000). But the court thought that the evidence would allow a jury to find that the other two defendants, John McCabe and Raymond McNally, failed to alert the prosecutors that Newsome's fingerprints did not match those they had obtained at the scene of the crime. Moreover, a jury could find that McCabe and McNally encouraged two witnesses to select Newsome from a lineup-- which the witnesses did, forming a vital link in the process that led to Newsome's conviction as Cohen's killer--yet withheld from the prosecutors information about their coaching of the witnesses and the fact that these witnesses earlier selected pictures from a book of mug shots that did not contain Newsome's photo. The judge concluded that these events could support damages for malicious prosecution, which the judge viewed as a constitutional tort when:

(1) the requirements of a state law cause of action for malicious prosecution are satisfied; (2) a state actor committed the malicious prosecution; and (3) plaintiff was deprived of liberty.

2000 U.S. Dist. Lexis 5678 at *31-32. The judge thought that all three of these ingredients have been satisfied because, taking the facts in the light most favorable to Newsome and disregarding all testimony derived from the tainted identifications, there was not even

probable cause to prosecute him for Cohen's murder. Id. at *35-36. Because the evidence could support an inference that McCabe and McNally suborned perjury by the two eyewitnesses, the judge concluded in his order denying reconsideration that they are not entitled to qualified immunity, for both the right to be free of malicious prosecution and the rule against suborning perjury have been around a very long time.

McCabe and McNally have filed this interlocutory appeal to argue for immunity, as they are entitled to do, see Behrens v. Pelletier, 516 U.S. 299 (1996), but the first question on the table is whether Newsome has made out a violation of constitutional rights--for we cannot call a constitutional right "clearly established" when the defendants acted (here in 1979 and 1980) if it has never been established at all. See Wilson v. Layne, 526 U.S. 603, 609 (1999); Conn v. Gabbert, 526 U.S. 286, 290 (1999). Defendants make a strong pitch regarding point (1) of the district court's list. They insist that Newsome has not made out "the requirements of a state law cause of action for malicious prosecution" because neither McCabe nor McNally prosecuted Newsome or was a party to the case. The People of the State of Illinois (through the State's Attorney), not police officers, brought the criminal prosecution. This contention has led to a complex debate about the extent to which, under Illinois law, a complaining witness can be deemed a party for purposes of the tort of malicious prosecution. Our opinion in Logan v. Caterpillar, Inc., 246 F.3d 912, 921-26 (7th Cir. 2001), explores some of these subtleties. But the answer doesn't matter unless there is a constitutional tort called "malicious prosecution," a subject not fully resolved in Albright v. Oliver, 510 U.S. 266 (1994), and this constitutional tort applies to state actors the same rules state courts apply to private actors, thus using the Constitution to enforce state law. Recall the district judge's formulation: the plaintiff must show all requirements of a tort claim under state law, plus a deprivation of liberty, plus the defendant's status as a state actor (this last ingredient found in sec.1983 itself). Whatever scope malicious prosecution may have as a constitutional

tort after Albright, it does not depend on state law in this way. To the contrary, the existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution.

Whether there is a constitutional right not to be prosecuted without probable cause--the question that the district court saw through the lens of malicious prosecution--was addressed and answered in the negative by seven Justices in Albright. The problem is that they did not agree on the reason. Four Justices concluded that probable cause is the exclusive domain of the fourth amendment, and that unless the plaintiff can establish that his arrest was unlawful there is no further constitutional claim. 510 U.S. at 268-75 (Rehnquist, C.J., joined by O'Connor, Scalia & Ginsburg, JJ.). See also Baker v. McCollan, 443 U.S. 137 (1979) (if probable cause exists at the time of arrest, then the police cannot be held liable for ensuing custody, even if mistaken). Newsome had a potential fourth amendment claim, but as we mentioned at the outset the time to pursue it expired almost 20 years ago. One Justice preferred to analyze the subject in terms of substantive due process, an approach that could leave room for Newsome's claim but doomed Albright's because he did not argue that the police engaged in egregious misconduct. 510 U.S. at 286-91 (Souter, J.). Two more Justices believed that the right approach lies in due process without substantive coloration--whether the person seized by the state had an adequate opportunity to defend himself in the criminal prosecution and, if not, an adequate opportunity to obtain compensation in state court. 510 U.S. at 281-86 (Kennedy, J., joined by Thomas, J.). A jury might conclude that McCabe and McNally deprived Newsome of an adequate chance to defend himself in the criminal prosecution. But Justices Kennedy and Thomas concluded that in such circumstances the federal Constitution still does not supply a damages remedy, unless the state courts refuse to do so. Their approach relies on Parratt v. Taylor, 451 U.S. 527, 535-44 (1981), which holds that the opportunity to sue in state courts usually supplies all the process that is due to redress unauthorized activities of state

employees. Justices Kennedy and Thomas concluded that remedies available to Albright under state law for wrongful prosecution provided him with due process of law. States differ in their willingness to provide such remedies--but the state in question in Albright was Illinois, and remedies available to Albright are (or were) available to Newsome too. What this means is that satisfying the elements of the state-law tort of malicious prosecution, far from being the foundation of a constitutional tort as the district judge believed, knocks out any constitutional tort of malicious prosecution, because, when a state-law remedy exists, Justices Kennedy and Thomas conclude that due process of law is afforded by the opportunity to pursue a claim in state court, and four other Justices do not think that the due process clause applies in the first place.

The district judge is hardly to be faulted for using a tripartite formula for a constitutional tort of malicious prosecution. This court has articulated it at least four times since Albright. See Cervantes v. Jones, 188 F.3d 805, 809 (7th Cir. 1999); Sneed v. Rybicki, 146 F.3d 478, 480 (7th Cir. 1998); Washington v. Summerville, 127 F.3d 552, 558-59 (7th Cir. 1997); Reed v. Chicago, 77 F.3d 1049, 1051 (7th Cir. 1996). But in none of these cases did anything turn on the precise formulation, and none of our opinions dealt with reconciling this formulation with the position that Justices Kennedy and Thomas took in Albright, which, as the narrowest ground of decision, constitutes the effective holding of the Court. See Marks v. United States, 430 U.S. 188, 193 (1977). The formula appears to be dictum developed from pre-Albright opinions, unexamined in our more recent decisions because the parties to Cervantes, Sneed, Washington, and Reed did not seek to have this court reexamine the issue in the light of intervening developments. In other recent decisions we have recognized that Albright scotches any constitutional tort of malicious prosecution when state courts are open. See, e.g., Mays v. East St. Louis, 123 F.3d 999, 1002-03 (7th Cir. 1997); Spiegel v. Rabinovitz, 121 F.3d 251, 254-57 (7th Cir. 1997); Smart v. Board of Trustees, 34 F.3d 432, 434-35 (7th Cir. 1994) (suggesting the

possibility of a claim based on the first amendment if the prosecution is used to punish speech). See also Snodderly v. R.U.F.F. Drug Enforcement Task Force, 239 F.3d 892, 901 (7th Cir. 2001); Williams v. Heavener, 217 F.3d 529, 531-32 (7th Cir. 2000). These opinions do not address the tripartite formula of Cervantes, Sneed, Washington, and Reed. Having given the matter some thought, we now withdraw the dicta in those four opinions. Claims of malicious prosecution should be analyzed not under the substantive due process approach implied by this formula but under the language of the Constitution itself and, if state law withholds a remedy, under the approach of Parratt adopted by Justices Kennedy and Thomas in Albright. Relabeling a fourth-amendment claim as "malicious prosecution" would not extend the statute of limitations (Reed so holds), and if a plaintiff can establish a violation of the fourth (or any other) amendment there is nothing but confusion to be gained by calling the legal theory "malicious prosecution."

Where does this leave Newsome? Certainly not with a constitutional claim founded on malicious prosecution. Nor does he have a viable fourth amendment claim, for the statute of limitations expired long ago. But he does have a due process claim in the original sense of that phrase--he did not receive a fair trial if the prosecutors withheld material exculpatory details. See Brady v. Maryland, 373 U.S. 83 (1963). Although the State's Attorney did not have in his file details about the fingerprints and the means McCabe and McNally used to influence the identification, a prosecutor is responsible for learning of and disclosing all exculpatory evidence known to the police. See Kyles v. Whitley, 514 U.S. 419, 437-38 (1995). Defendants recognize that a claim along these lines states a genuine constitutional tort. See Jones v. Chicago, 856 F.2d 985 (7th Cir. 1988); Jean v. Collins, 221 F.3d 656 (4th Cir. 2000) (en banc) (all 12 judges concluded that police who deliberately withhold exculpatory evidence, and thus prevent the prosecutors from complying with Brady, violate the due process clause). Such a violation occurred at trial (for Brady identifies a trial right) and therefore the due process claim's accrual was postponed by Heck

until the pardon. Nonetheless, defendants contend, if the claim is recast in this fashion then they prevail because they did not withhold evidence; the prosecutor did so (even if they were to blame). Because injury depended on the action of the prosecutor they either are not substantively liable or possess a derivative form of immunity, the line of argument concludes.

Buckley v. Fitzsimmons, 20 F.3d 789 (7th Cir. 1994), provides the principal support for this contention. It holds that responsibility rests on the prosecutor, rather than the police, when there would have been no injury but for a prosecutorial decision that is protected by absolute immunity. Buckley finds company in Michaels v. McGrath, 222 F.3d 118 (3d Cir. 2000), but two circuits have reached contrary conclusions. See Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000); Clanton v. Cooper, 129 F.3d 1147 (10th Cir. 1997). One Justice has expressed the view that Buckley was decided incorrectly. See Michaels v. McGrath, 121 S. Ct. 873 (2001) (Thomas, J., dissenting from the denial of certiorari). But Newsome's suit does not present the Buckley issue, and defendants' reliance on that decision is unavailing, for a fundamental reason: Buckley supposed that the police had been forthcoming with the prosecutors, so that injury really could be traced to prosecutorial decisions. We distinguished what occurred in Jones, where the police had fabricated some evidence and concealed much exculpatory information. If officers are not candid with prosecutors, then the prosecutors' decisions--although vital to the causal chain in a but-for sense--are not the important locus of action. Pressure must be brought to bear elsewhere. Prosecutors kept in the dark by the police (and not negligent in failing to hire other persons to investigate the police) won't improve their performance with or without legal liability for their conduct. Requiring culpable officers to pay damages to the victims of their actions, however, holds out promise of both deterring and remediating violations of the Constitution.

Putting Buckley and all problems of establishing causation to one side, we make the normal immunity inquiry: was it clearly established in 1979 and 1980 that

police could not withhold from prosecutors exculpatory information about fingerprints and the conduct of a lineup? See Wilson, 526 U.S. at 614-18; Anderson v. Creighton, 483 U.S. 635, 639 (1987); Saucier v. Katz, No. 99-1977 (U.S. June 18, 2001). The answer is yes: The Brady principle was announced in 1963, and we applied it in Jones to affirm a hefty award of damages against officers who withheld exculpatory information in 1981. This is not to say that McCabe or McNally did anything wrong; like the district judge we have taken the evidence and all reasonable inferences in Newsome's favor, as the summary-judgment standard requires. No one would quarrel with the assertion in defendants' reply brief that "in 1979 [and today], the detectives could have reasonably believed that it should be up to the prosecutors, and ultimately the court, to determine if an eyewitness identification is sufficiently reliable for use at trial." Newsome has made a more serious claim that the defendants withheld information important to that prosecutorial (and judicial) decision, and on this interlocutory appeal we cannot resolve disputes about the record. See Johnson v. Jones, 515 U.S. 304 (1995). If Newsome can prove what he alleges, then under the approach of Brady and Jones v. Chicago he will establish a violation of the due process clause, a kind of violation for which officers McCabe and McNally do not have immunity. This is not the basis of the district court's order, nor is it Newsome's preferred theory--malicious prosecution is not tenable as an independent constitutional theory--but we may affirm a decision on any ground that the record supports. The decision of the district court rejecting defendants' affirmative defense of qualified immunity is accordingly

affirmed.