In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2395

Joseph Ienco,

Plaintiff-Appellant,

v.

City of Chicago, a municipal corporation,
P.O. Kenneth Angarone, individually
and in his official capacity as a member
of the Chicago Police Department, and
P.O. Thomas McGann, individually and
in his official capacity as a member
of the Chicago Police Department,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 3831--Ruben Castillo, Judge.

Argued February 13, 2002--Decided April 12, 2002

Before Coffey, Manion, and Williams,
Circuit Judges.

Williams, Circuit Judge.  Joseph Ienco was convicted of various federal weapons and extortion charges in April 1995. After raising several successful constitutional challenges to the manner of his arrest, his conviction was overturned and the indictment was dismissed. Seeking compensation for what he believed to be a wrongful prosecution caused by the actions of defendants City of Chicago ("the City") and two City police officers, Ienco brought an action under 42 U.S.C. sec. 1983. The district court, in granting summary judgment for defendants, concluded that Ienco's state and federal malicious prosecution claims failed on the merits as a matter of law, because he could not prove that the defendants denied his substantive due process rights. Ienco appeals. During the pendency of his appeal, we decided Newsome v. McCabe, 256 F.3d 747 (7th Cir. 2001), which held that federal malicious prosecution claims should not be examined under a theory of substantive due process, but must instead be analyzed under the due process clause directly. In

light of Newsome, we reverse judgment as to the individual officers but affirm judgment as to the City.

I.  BACKGROUND

A.  Facts

Joseph Ienco operated as a real estate broker and rent collector, along with his associate Gregory Iovine. On the side, Ienco doubled as a debt collection enforcer. In August 1994, Ienco and Iovine were sent to collect payment from a Chicago businessman, Jerome Greenberg, who apparently owed a debt to Ienco's boss, a clothing importer. Ienco and Iovine traveled to Chicago and secured a hotel room and rental car. Shortly thereafter, they paid a visit to Greenberg at his Chicago office, where they talked tough with Greenberg about the money that he owed to Ienco's boss. Ienco and Iovine left, intending to return to Greenberg's office to engage in more aggressively threatening behavior, primarily with the aid of firearms and explosives.

When Ienco and Iovine returned to Greenberg's building, Greenberg saw them and called the police. Defendant Chicago police officers Kenneth Angarone and Thomas McGann soon arrived at the scene. What happened next is the source of much dispute. In brief, Ienco claimed that the officers conducted an unlawful search and seizure. The officers claimed that they received consent for all search and seizure activity. What is not in dispute is that the search and seizure of Ienco and his associate began a chain of events that led the officers to discover that Ienco and Iovine's rental vehicle contained a variety of dangerous weapons. Acting with Iovine's tacit approval, government agents also discovered more incriminating evidence in Ienco and Iovine's hotel room.

B.  District Court Procedural History

Ienco was charged with various federal crimes regarding his cache of illegal weapons and explosives and his attempts at extortion. As one might expect, he moved to suppress the physical evidence seized following his arrest, arguing that it was the product of an illegal search and seizure. At trial, these issues were

initially discussed at length in a suppression hearing before Judge Duff. Judge Duff denied the motion to suppress, finding that the testimony of Officer Angarone was "complete, consistent, informed, careful, [and] professional." As a result of the denial of the motion to suppress, Iovine became a witness against Ienco--who was promptly convicted at trial. Officer Angarone testified at the suppression hearing and at trial. Officer McGann offered a stipulation for the suppression hearing and proffered testimony that was not introduced at trial. Ienco was sentenced to 425 months in prison, and he appealed.

In United States v. Ienco, 92 F.3d 564 (7th Cir. 1996) ("Ienco I"), we reversed and remanded, finding that the district court committed several prejudicial errors, which required a new suppression hearing and trial. Pursuant to Circuit Rule 36, we assigned the matter to Judge Coar.

Judge Coar conducted a thorough review of the record on the motion to suppress. Both officers testified at the new suppression hearing. After weighing all available information, Judge Coar found numerous inconsistencies in the officers' stories, concluding that "[i]n short, Angarone and McGann lied."/1 Appropriately, he suppressed the evidence. The government appealed./2

We affirmed. In United States v. Ienco, 182 F.3d 517 (7th Cir. 1999) ("Ienco III"), we found that suppression of all physical evidence was warranted, because the officers lacked reasonable suspicion for a Terry stop and also unlawfully arrested Ienco. See, e.g., Terry v. Ohio, 392 U.S. 1, 21-22 (1968). We did not extensively address Judge Coar's factual findings that the officers lied. However, we did note that the government did not appeal Judge Coar's findings of fact as to what actually occurred, effectively conceding that the officers' testimony was not to be believed. See Ienco III, 182 F.3d at 524, n. 4.

After our decision in Ienco III, the government dismissed the indictment. Shortly thereafter, Ienco brought thecurrent action. Although Ienco initially alleged a host of constitutional violations, he eventually

focused on a single issue: whether the defendants were liable under a malicious prosecution theory pursuant to Illinois state and federal law.

The district court, applying our precedent, concluded on summary judgment that the undisputed material facts in this case did not permit Ienco to pursue a malicious prosecution theory against either the officers or the City. The district court correctly found that Ienco failed to prove that the proceedings were terminated in a manner indicative of his innocence, as required by state law. See Joiner v. Benton Community Bank, 81 Ill.2d 40, 45 (1980). Since it was settled that a valid state claim was a necessary prerequisite for a Section 1983 claim of malicious prosecution, the district court held that the resolution of the state law claim resolved Ienco's federal claims as well. See Cervantes v. Jones, 188 F.3d 805, 809 (7th Cir. 1999); Washington v. Summerville, 127 F.3d 552, 557 (7th Cir. 1997). Because Ienco's Section 1983 claim was thus entirely foreclosed, summary judgment was entered for the defendants. This appeal followed.

II.  ANALYSIS

We review the district court's decision granting summary judgment de novo. Grube v. Lau Indus., Inc., 257 F.3d 723, 727 (7th Cir. 2001). As we must, we review the evidence in the light most favorable to Ienco as the nonmoving party, and we make all reasonable and justifiable inferences in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

A.  Newsome and Ienco's Malicious Prosecution Claim

The standards for a successful Section 1983 action against local police officers or a municipality are well known. To prove the officers' liability, Ienco must show that (1) he was deprived of a federal right and (2) that the deprivation was imposed upon him by one or more persons acting under color of state law. See Gomez v. Toledo, 446 U.S. 635, 640 (1980). To establish liability for the City of Chicago, Ienco must prove that: (1) he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread

custom, or deliberate act of a decision-maker with final policy-making authority for the City; which (3) was the proximate cause of his injury. See Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91 (1978); Frake v. City of Chicago, 210 F.3d 779, 781 (7th Cir. 2000).

At the outset, there is much agreement about Ienco's claims before us. First, all parties agree that the state law claims were properly decided by the district court. This is clear, because Ienco cannot meet his burden of proving under Illinois law that the criminal proceedings terminated in a manner indicative of his innocence. Likewise, the parties agree that our intervening decision in Newsome v. McCabe, 256 F.3d 747 (7th Cir. 2001), discussed below, effectively bars Ienco's malicious prosecution claim as presented to the district court on summary judgment. Therefore, the principal question remaining is whether Ienco's allegations, coupled with our intervening decision in Newsome, provide Ienco with opportunity to pursue a constitutional remedy sufficient to defeat summary judgment. As we explain below, we conclude that such a remedy exists. We must also address whether, at this stage, the officers are entitled to absolute or qualified immunity. As we also explain below, we find that they are not.

The unique procedural posture of this case requires some elaboration. As the law existed at the time this case was filed, the district court's disposition of the state law malicious prosecution claim would have ended the analysis, and summary judgment would have been properly awarded to the defendants. However, after the district court granted summary judgment in favor of the officers, we decided Newsome./3

In Newsome, we withdrew dicta in four of our previous opinions/4--which had each been understood to permit Section 1983 malicious prosecution claims but bar similar claims asserting that defendants' actions violated due process rights. Newsome clarified the proper analysis, by holding that Section 1983 provides a remedy for certain forms of trial-based government misconduct based on violations of due process--not claims of malicious

prosecution. Specifically, we held that "claims of malicious prosecution should be analyzed not under the substantive due process approach [embodied by the malicious prosecution formula], but under the language of the Constitution itself." Newsome, 256 F.3d at 751. Newsome teaches that, under these circumstances, the plaintiff must allege that the officers withheld information or evidence necessary for the fair and impartial trial guaranteed by the U.S. Constitution. Ultimately, we held that Newsome's constitutional claim of malicious prosecution failed as a matter of law. Nonetheless, we recognized that Newsome did have a federal due process claim--that taking the facts as alleged "he did not receive a fair trial if the prosecutors withheld material exculpatory details." Newsome, 256 F.3d at 752.

Because our decisions prior to Newsome had been reasonably read to foreclose a due process action under facts similar to those in this case, we did not penalize Newsome for failing to convincingly argue such a cause of action at summary judgment. Similarly, under the facts of this case and the law at the time, Ienco had only one valid constitutional claim to pursue--malicious prosecution./5 After Newsome, Ienco still has only one timely constitutional claim to pursue--but it is for a violation of his due process rights under the 14th Amendment. Because Newsome was an intervening change in the law that benefits Ienco, he is entitled to take advantage of it on remand. See, e.g., Molnar v. Booth, 229 F.3d 593, 599 (7th Cir. 2000). On remand, Ienco should be permitted to amend his complaint to include allegations relevant to a viable due process claim under Newsome.

B.  Officers' Defenses--Waiver and Immunity

Notwithstanding our disposition of Ienco's constitutional remedy, the defendant officers contend that summary judgment was appropriate for three additional reasons, because: (1) Ienco failed to present a due process argument to the court below; (2) the officers are entitled to absolute testimonial immunity; and (3) the officers' conduct was not explicitly proscribed by our previous opinions./6 We reject each of

these contentions in turn.

1. Waiver of due process claim

Although the officers contend that Ienco did not properly raise his due process claim, we disagree. First, Ienco's complaint was sufficiently detailed to put the defendants on notice of his due process claim, and he explicitly alleged that "the acts complained of deprived plaintiff of his right . . . not to be deprived of liberty without due process of law." Complt. at 98. The defendants' response and motion to dismiss explicitly recognized Ienco's due process claim, because they responded that "plaintiff cannot base his claim against City upon allegations of a due process violation." City resp. at 7.

Further, as the district court recognized in its detailed and thorough opinion, it would have been a futile effort for Ienco to seriously pursue a due process claim prior to Newsome./7 To that end, after the initial stages of this case were heard before the district court, Ienco conceded that Smart v. Board of Trustees v. Univ. of Illinois, 34 F.3d 432 (7th Cir. 1994) effectively prohibited a malicious prosecution claimant from proceeding under the due process clause directly--a path that we explicitly set out for the first time in Newsome. See Smart, 34 F.3d at 434 (holding that a malicious prosecution claimant's "only constitutional remedy is under the Fourth Amendment (as made applicable to the states by the Fourteenth) and not under the due process clause directly"). Under these circumstances, we decline to hold that Ienco waived his due process claim.

2. Absolute Immunity

Next, the officers claim that they are entitled to absolute immunity because their alleged perjury is protected as a matter of law--both before and during Ienco's criminal trial proceedings. See Briscoe v. LaHue, 460 U.S. 325 (1983). Ienco contends that this view of the case is too narrow: he alleges that the officers actively withheld testimony and evidence--thus placing their conduct outside of the safety of trial-based immunity. We agree with the officers'

general statement of law. Nonetheless, as Ienco properly contends, our inquiry does not end there.

If Ienco were merely claiming damages based upon the officers' perjured testimony, the officers would be entitled to absolute immunity. See Curtis v. Bembenek, 48 F.3d 281, 285 (7th Cir. 1995). However, Ienco's claims are not based upon the officers' perjured testimony. Instead, he argues that the officers withheld exculpatory information and lied to the federal prosecutors who successfully indicted him. Neither the withholding of exculpatory information nor the initiation of constitutionally infirm criminal proceedings is protected by absolute immunity. See, e.g., Brady v. Maryland, 373 U.S. 83 (1963); Jones v. City of Chicago, 856 F.2d 985 (7th Cir. 1988)./8 Therefore, no absolute testimonial immunity attaches to the actions of the officers outside of trial, and they are proper defendants in this action./9

3.  Qualified Immunity

Finally, there is the familiar matter of qualified immunity. To determine if immunity attaches to the actions of the officers, we undertake the two-part qualified immunity test described most recently in Saucier v. Katz, 533 U.S. 194 (2001). As Saucier teaches, first we ask whether Ienco has made out a violation of a constitutional right. Second, we ask whether that right was clearly established at the time that the disputed conduct took place.

As to the first prong of Saucier, we note that Judge Coar's meticulous and unchallenged factual findings demonstrate that the officers engaged in conduct that violated the Fourth Amendment and could also have violated Ienco's 14th Amendment due process rights. See Jones v. City of Chicago, 856 F.2d at 994 (noting "at some point after a person is arrested, the question whether his continued confinement or prosecution is unconstitutional passes over from the Fourth Amendment to the due process clause"). Ienco's Fourth Amendment claims expired two years after his arrest. See Newsome, 256 F.3d at 749. Accordingly, his due process claims are limited to the officers' actions (or non-actions) that

occurred following his arrest and only to those actions that were not protected by testimonial immunity. As to Saucier's second prong, if Ienco's allegations are proved, the officers' conduct violated clearly established federal law which was known or should have been known by a reasonable officer in 1995. See, e.g., Jones v. City of Chicago, 856 F.2d at 992. Therefore, in order to determine if the officers are entitled to qualified immunity, we remand this fact-intensive issue to the district court to determine if the officers engaged in conduct that violated Ienco's due process rights.

## C. City's Liability

Given our reversal of summary judgment as to the officers, Ienco contends that we must similarly reverse the district court's judgment in favor of the City. He is mistaken. In order to establish municipal liability under Section 1983, the plaintiff must prove that a "custom or policy of the City was a cause of the plaintiff's injury." Jones v. City of Chicago, 856 F.2d at 995; see also Cornfield by Lewis v. Consolidated High School Dist. No. 230, 991 F.2d 1316 (7th Cir. 1993).

True, Ienco's complaint made bare-bones allegations about the City's customs and policies--in general. However, Ienco introduced no material evidence at summary judgment that Officers Angarone or McGann were acting pursuant to an official custom or policy of the City of Chicago. We also note that nowhere has Ienco suggested that the actions of Officers Angarone or McGann extended beyond their role in his particular case. See Williams v. Heavener, 217 F.3d 529, 532 (7th Cir. 2000) ("Ordinarily, one incident is not sufficient to establish a custom that can give rise to Monell liability.") Therefore, we affirm judgment as to the City.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court as to the City of Chicago, and REVERSE the judgment of the district court as to Officers Angarone and McGann and REMAND the case for further proceedings.

FOOTNOTES

/1 In the criminal case, the City chose not to dispute Judge Coar's findings of fact on appeal. Likewise, in this case, the government's admissions, both for summary judgment and at oral argument, leave us with no doubt that at least some portion of the officers' testimony was fabricated.

/2 Although we entered an intervening opinion on certain evidentiary matters, United States v. Ienco, 126 F.3d 1016 (7th Cir. 1997) ("Ienco II"), those matters were ultimately resolved by the final appeal.

/3 Newsome explicitly rejected portions of four of our recent opinions. As such, the District Court should not be faulted for following the law as we had previously explained it. See Reed v. City of Chicago, 77 F.3d 1049, 1051 (7th Cir. 1996) (noting that the question of which constitutional amendment was implicated in a Section 1983 malicious prosecution claim was still "somewhat unclear").

/4 Cervantes v. Jones, 188 F.3d 805, 809 (7th Cir. 1999); Sneed v. Rybicki, 146 F.3d 478, 480 (7th Cir. 1998); Washington v. Summerville, 127 F.3d 552, 558-59 (7th Cir. 1997); Reed v. Chicago, 77 F.3d 1049, 1051 (7th Cir. 1996). Our decisions in each of those cases attempted to decipher the Supreme Court's opinion in Albright v. Oliver, 510 U.S. 266 (1994), a subject addressed at length in Newsome, 256 F.3d at 750-51.

/5 Our district courts consistently interpreted our opinions prior to Newsome in accordance with Ienco's strategy in the district court below. See, e.g., Ewing v. O'Brien, 60 F.Supp.2d 813, 817 (N.D. Ill. 1999) ("no court has yet agreed with the notion that reconciling Albright with Seventh Circuit precedent forecloses a malicious prosecution claim under sec.1983").

/6 It is not seriously disputed that Ienco's due process claim arose only when proceedings were terminated in his favor. As such, the timeliness of his claim is not at issue. See Sneed v. Rybicki, 146 F.3d 478 (7th Cir. 1998).

/7 See Memorandum of Summary Judgment, fn. 1.

/8 Contrary to counsel's argument before us, the concerns raised in Buckley v. Fitzsimmons, 20 F.3d 789 (7th Cir. 1994), are not implicated here. Unlike the facts in Buckley, Ienco alleges that the officers misled Ienco as well as the prosecutors and the Federal Bureau of Investigation. Such conduct is not protected by absolute immunity.

/9 Because plaintiff's claims ultimately rest in part on conduct that occurred before and after trial, we need not decide at this point whether and to what extent the complaining witness exception applies. The district court is best equipped to handle this fact-intensive issue. See Cervantes v. Jones, 188 F.3d 805, 809-10 (7th Cir. 1999) (discussing police officer immunity when officers act as complaining witnesses at trial).