In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-2564

GEORGE E. MCCULLAH,

*Plaintiff-Appellant,*

*v.*

MARK GADERT and the CITY OF
SPRINGFIELD, ILLINOIS,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 00-C-3325—**Jeanne E. Scott**, *Judge.*

SUBMITTED JANUARY 15, 2003[1]—SEPTEMBER 22, 2003

Before MANION, KANNE, and DIANE P. WOOD, *Circuit
Judges.*

DIANE P. WOOD, *Circuit Judge.* This case arose after a
barroom altercation was broken up by an off-duty police
officer, Mark Gadert, and charges were brought against
one of the bar's patrons, George McCullah. Although
these charges eventually were dismissed, McCullah suf-
fered both temporary and permanent consequences from

---

[1] The court granted appellant's motion to waive oral argument
in an order dated January 10, 2003. Thus, the appeal is submit-
ted on the briefs and the record.

them: he was incarcerated, he had to pay for a lawyer, and he lost his job. None of this would have happened, he believes, had Officer Gadert not provided false testimony supporting the charges in a post-incident report and at a preliminary hearing. McCullah therefore sued both Officer Gadert and the Springfield Police Department under 42 U.S.C. § 1983, claiming among other things that his Fourth Amendment rights had been violated; he also raised supplemental claims under Illinois law. The district court dismissed McCullah's § 1983 claims and refused to retain jurisdiction over the state-law claims. McCullah now appeals that dismissal along with the district court's denial of leave to amend the complaint. We affirm in part and remand in part for further proceedings.

## I

Tempers flared one December evening in 1999 at the Brew Haus in Springfield, Illinois, leading to an altercation between two of McCullah's friends and another patron. Officer Gadert intervened, though he was off-duty at the time. Entering the fray, McCullah interfered with Gadert's efforts to halt the argument, although the extent of the interference is disputed. Officer Gadert claims that McCullah repeatedly interfered physically and verbally with Gadert's efforts to break up the fight, that he threatened to have Gadert audited (perhaps a credible threat, as McCullah then worked for the Illinois Department of Revenue), and that McCullah attempted to impersonate a police officer. McCullah denies all of this. According to McCullah, he simply asked Gadert to identify himself but never heard a response. At one point, McCullah also alleged that he observed Gadert brandishing a City of Springfield police badge, but McCullah's original and amended complaints are inconsistent on this matter.

Officer Gadert later approached McCullah a second time, joined by two uniformed officers. The officers asked McCullah to step outside, subjected him to questioning, and told him that he could not re-enter the bar. Again, what transpired next is unclear. The parties dispute whether Gadert identified himself as a police officer. Nevertheless, everyone agrees that at no time did Gadert threaten McCullah with arrest or criminal citation.

As required under departmental regulations, Gadert wrote up the incident in a report. The report convinced the Sangamon County State's Attorney's Office to file criminal felony charges against McCullah. In short order, McCullah was summoned to a court appearance on February 9, 2000, a $5,000 bond was set, and McCullah was taken to the Sangamon County Jail. At the jail, he was subjected to the usual battery of mugshots, fingerprints, and the surrender and inventory of his personal belongings. Authorities clothed him in an orange jumpsuit and placed him in a holding cell. All told, McCullah was at the jail for approximately seven hours prior to his posting of bond and release.

The court held a preliminary hearing on the felony charges on March 6, at which Officer Gadert testified about the events in question. At the conclusion of the hearing the court dismissed the felony charges; the state's attorney promptly substituted a misdemeanor charge for obstructing a peace officer. This charge too was later dismissed, this time before a hearing could be held. In the meantime, however, McCullah had to retain counsel to secure the dismissal of both sets of charges. Worse yet from his perspective, several weeks after the dismissal of the felony charges but prior to the dismissal of the misdemeanor charges, McCullah was fired from his job at the Department of Revenue.

McCullah filed three successive complaints against Officer Gadert and the City of Springfield. The district court

dismissed each of these complaints for failure to state a claim, the last time with prejudice. In each, Counts I and III leveled state-law malicious prosecution claims against Gadert and the City, respectively. Counts II and IV advanced § 1983 claims against these same defendants. The only difference among the three complaints was that the initial version alleged violations of the Due Process Clauses of the Fifth and Fourteenth Amendments, while the second and third iterations asserted § 1983 claims under the Fourth Amendment. McCullah now appeals both the dismissal of the third complaint and the denial of leave to amend yet again.

## II

McCullah's principal claim on appeal is that the district court erred in dismissing the part of his complaint alleging that Officer Gadert violated his Fourth Amendment rights by providing false information about him, both in the incident report that Gadert filed shortly after the Brew Haus altercation and also through testimony offered at the preliminary hearing on the felony charges. We review the district court's decision to grant a motion to dismiss for failure to state a claim *de novo*, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in McCullah's favor. See *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002).

## A

The district court rested its dismissal of McCullah's Fourth Amendment claim on two recent decisions of this court that substantially altered our approach to malicious prosecution claims brought under § 1983. See *Ienco v. City of Chicago*, 286 F.3d 994 (7th Cir. 2002); *Newsome v.*

*McCabe*, 256 F.3d 747 (7th Cir. 2001) ("*Newsome I*"). Those cases built upon the Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266 (1994)—a decision in which there was no single opinion of the Court. We must decide here whether, under those cases, McCullah has stated a claim on which relief can be granted.

In *Albright*, the plaintiff brought a § 1983 action, alleging that detectives had violated his right to substantive due process by offering testimony against him at a preliminary hearing on criminal charges that were later dismissed. The plaintiff claimed that his right to be free from criminal prosecution except upon probable cause had been violated. The four Justices that made up the plurality concluded in an opinion written by Chief Justice Rehnquist that Albright's claim was cognizable under the Fourth Amendment, but not under substantive due process. *Albright*, 510 U.S. at 271 (plurality opinion). They relied on the teaching of *Graham v. Connor*, 490 U.S. 386 (1989), which held that constitutional claims should, where possible, go forward under rights rooted in an explicit textual command of the Constitution rather than more generalized notions of substantive due process. *Id.* at 395. Because Albright had not alleged a violation of his Fourth Amendment rights, the plurality concluded that his suit could not go forward.

In arriving at the same result, Justice Kennedy—joined by Justice Thomas—adopted a different approach. Justice Kennedy looked to the line of cases extending from *Parratt v. Taylor*, 451 U.S. 527 (1981), which held that the federal Constitution does not supply a damages remedy for violations of procedural due process where the state provides an adequate postdeprivation remedy. Justice Kennedy reasoned that the "commonsense teaching" of *Parratt* is that constitutional torts do not arise except where state law does not provide a parallel remedy. *Id.* at 284. This rule should be equally applicable, he continued,

to cases like Albright's that were nominally brought as substantive due process claims. *Id.* at 285. The availability of a parallel state-law tort of malicious prosecution in Illinois compelled dismissal of Albright's claim. *Id.* at 285-86.

In *Newsome I,* this court was faced with the task of distilling the operative rule from *Albright* that emerged from the various separate opinions. Newsome had been arrested for a murder and armed robbery in 1979. He was convicted after a trial, but eventually the state courts vacated his conviction and he was pardoned on grounds of actual innocence. He then sued five officers of the Chicago Police Department, claiming that they had unlawfully procured witness identifications that led to his detention and had otherwise violated his rights. *Newsome I*, 256 F.3d at 749; see also *Newsome v. McCabe (II)*, 319 F.3d 301 (7th Cir. 2003), cert. denied, 123 S.Ct. 2621 (2003). We began by concluding that Justice Kennedy's concurring opinion represented the narrowest ground for decision, and thus it set forth the governing law. *Newsome I*, 256 F.3d at 751 (citing *Marks v. United States*, 430 U.S. 188, 193 (1977)). Second, we noted that Newsome had a potential Fourth Amendment claim for a wrongful arrest and detention, but that any such claim was long since barred by the statute of limitations. *Id.* at 750. That left his substantive due process claim, which we found could not be brought, given *Albright*, because of the availability of a parallel state-law tort of malicious prosecution in Illinois. *Id.* at 751. In short, we found that the existence of a state-law tort remedy "knocks out" any constitutional tort *under due process* for the same conduct. *Id.* at 751 (emphasis added).

*Ienco* sheds further light on the line we drew in *Newsome I*. There, the plaintiff brought suit under § 1983, attempting to raise a constitutional claim based on malicious prosecution. *Ienco*, 286 F.3d at 996. Ienco asserted that the

two City of Chicago police officers who had arrested him had violated his substantive due process rights when they withheld exculpatory information and lied to the federal prosecutors who then, relying on those lies, initiated criminal proceedings against him. *Id.* at 1000. We reversed the district court's award of summary judgment to the defendants, noting that our intervening decision in *Newsome I* came after the district court's grant of summary judgment to defendants. This "unique procedural posture," we concluded, was enough to justify giving Ienco one last opportunity to amend his complaint to raise a claim under the Due Process clause that complied with the strictures of *Newsome I. Id.* at 998-99. We also found that the officers were not entitled to absolute testimonial immunity, because the claim did not rely on the existence of perjured testimony, and that the record was insufficient to evaluate the claim of qualified immunity. *Id.* at 1000-01.

**B**

It is important to recall that the district court's dismissals in this case were all under Fed. R. Civ. P. 12(b)(6). The fact that McCullah has changed legal theories from complaint to complaint is thus not important, because it is well established that plaintiffs are under no obligation to plead legal theories. See, *e.g.*, *Slaney v. Int'l Amateur Athletic Found.*, 244 F.3d 580, 600 (7th Cir. 2001); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). From the start, the only question has been whether McCullah satisfied the notice pleading standards of Rule 8 and if the facts he has presented would entitle him to relief under any applicable legal theory. In the discussion that follows, we confine ourselves for the sake of simplicity to the district court's evaluation of the third and final complaint.

The first lesson we take from *Albright*, *Newsome I*, and *Ienco*, is that it is possible to state a § 1983 claim that relies on the Fourth Amendment. In *Newsome I,* we observed that Newsome did have a potential Fourth Amendment claim, but that it could not be pursued because the statute of limitations had run. *Newsome I*, 256 F.3d at 750. The Fourth Amendment was barely mentioned in *Ienco,* and then only in passing. *Ienco*, 286 F.3d at 1000.

Looking back directly to *Albright*, we find nothing in the various opinions that would require dismissal of McCullah's Fourth Amendment claim. The Rehnquist plurality thought that Albright's claims against the arresting officers *should* be judged under the Fourth Amendment. See *Albright*, 510 U.S. at 271. And while the plurality was at pains later in the opinion to express "no view as to whether petitioner's claim would succeed under the Fourth Amendment," its stated reason for reserving judgment was that Albright had failed to present the question in his petition for certiorari. *Id.* at 275. It would be an unwarranted stretch to interpret this language as foreclosing all claims for wrongful arrest under the Fourth Amendment, regardless of the particular facts at issue. Nor did Justice Kennedy's concurring opinion conclude that the *Parratt* rule forecloses claims brought under the Fourth Amendment. Justice Kennedy's concern was with the misuse of due process theories and the proper line between state remedies and federal constitutional remedies. His focus was understandable, as Albright had brought his claims only under substantive due process.

In order to evaluate McCullah's complaint, we must now decide whether the *Parratt* rule must be applied to foreclose all constitutional claims for which there is a parallel remedy under state law, even if they are brought under a textually specific part of the Constitution, or if it applies only in the due process area. Our sister circuits have disagreed about the answer to this question. At

least one circuit appears to have adopted a broad reading of *Parratt*. See *Reid v. New Hampshire*, 56 F.3d 332, 341 (1st Cir. 1995) (holding that the *Parratt* rule forecloses a claim of false arrest under the Fourth Amendment because of the availability of a parallel cause of action under state law). Three other circuits take a narrower approach. See *Taylor v. Meacham*, 82 F.3d 1556, 1560 (10th Cir. 1996); *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1303 (5th Cir. 1995); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 114-15 (2d Cir. 1995).

We agree with the latter group. A more expansive version of the *Parratt* rule would be directly contrary to the teaching of *Carey v. Piphus*, 435 U.S. 247 (1978), that "[i]n some cases, the interests protected by a particular branch of the common law of torts may parallel closely the interests protected by a particular constitutional right." *Id.* at 258. The Court has never held that § 1983 is available only for cases with no state analog; indeed, it has specifically underscored that the contrary is true. See, *e.g.*, *Zinermon v. Burch*, 494 U.S. 113, 124 (1990) ("[O]verlapping state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983."); *Daniels v. Williams*, 474 U.S. 327, 338 (1986) (stating that if the claim is a violation of one of the specific constitutional guarantees of the Bill of Rights, "a plaintiff may invoke § 1983 regardless of the availability of a state remedy"). Furthermore, the core of *Parratt*'s holding is that a post-deprivation hearing (in a court) is sometimes all the process that is "due"; in contrast, no amount of process can support an arrest without probable cause. *Parratt* has nothing to say about a Fourth Amendment claim.

## III

The district court thus should not have held that *Albright*, *Newsome*, and *Ienco* required dismissal of Mc-

Cullah's claims. The only remaining question is whether we must remand this case for further proceedings, or if we can or should resolve it here. There are a number of legal questions that must be addressed before the court can be confident that McCullah has stated a claim on which relief can be granted, none of which has been briefed or explored in any meaningful way before this court. We think it best to allow further proceedings on these points, rather than to reach out and decide issues that have not been fully developed. We add only a few words about these issues, to clarify exactly what we have decided and what remains open.

McCullah's complaint focuses on government conduct that occurred both pre-arrest (*i.e.* the incident report containing allegedly fabricated information), and also post-arraignment (*i.e.* the allegedly false testimony given by Officer Gadert at the preliminary hearing). The incident report may be actionable if McCullah can show that it contains fabricated information, as opposed to showing that it omits allegedly exculpatory facts. The report led directly to McCullah's detention at the conclusion of his initial court appearance, which was the initial termination of his freedom of movement, see *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989), and was in no sense the continuation of a seizure that had already occurred, see *Wilkins v. May*, 872 F.2d 190, 194 (7th Cir. 1989).

Later McCullah wound up in custody, when he complied with the summons he received. Among the important questions to be resolved is whether this kind of summons is the equivalent of a seizure within the meaning of the Fourth Amendment, compare *United States v. Dionisio*, 410 U.S. 1, 9-10 (1973) (response to grand jury subpoena not covered by the Fourth Amendment), with *Albright*, 510 U.S. at 279 (Ginsburg, J., concurring), and *Evans v. Ball*, 168 F.3d 856, 860-61 (5th Cir. 1999) (summons plus additional liberty restrictions, including bond requirements,

restrictions on travel, or mandatory reporting to pretrial services, constitutes a seizure for Fourth Amendment purposes); *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998) (same); *Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir. 1997) (same); *Mahoney v. Kesery*, 976 F.2d 1054, 1060 (7th Cir. 1992) (suggesting that a required court appearance could be characterized as a constitutional tort only when combined with "traumatic" or "dramatic" acts like being subjected to a search, handcuffing, fingerprinting, or being photographed). Another important question is whether Gadert individually is immune from suit because McCullah appeared in court pursuant to a summons rather than as a result of a custodial arrest executed by Gadert.

The part of McCullah's complaint that focuses on post-arrest conduct also raises complex legal issues. His claim about Officer Gadert's allegedly false testimony at the preliminary hearing implicates this circuit's past rejection of the concept of continuing seizure in the Fourth Amendment context. See *Reed v. City of Chicago*, 77 F.3d 1049, 1052 n.3 (7th Cir. 1996); *Wilkins*, 872 F.2d at 194; see also *Fontana v. Haskin*, 262 F.3d 871, 880 n.5 (9th Cir. 2001) (collecting cases from other circuits). On the other hand, *Newsome I* expressly left undisturbed claims brought directly under the Due Process clause that alleged various kinds of trial-based government misconduct, such as the exculpatory evidence rule set forth in *Brady v. Maryland*, 373 U.S. 83 (1963). *Newsome I*, 256 F.3d at 752. In *Ienco*, the appellant was allowed to amend his complaint on remand and assert a due process claim that "the officers withheld information or evidence necessary for the fair and impartial trial guaranteed by the U.S. Constitution." *Ienco,* 286 F.3d at 999. We drew a careful distinction between claims directed at allegedly perjurious testimony, which are trial-based and thus foreclosed by absolute immunity, see, *e.g.*, *Briscoe v. LaHue*, 460 U.S.

325, 335-36 (1983), and claims based on the withholding of exculpatory information or the initiation of constitutionally infirm criminal proceedings, which are outside of trial and not subject to that particular immunity, see, *e.g.*, *Ienco*, 286 F.3d at 1000; *Jones v. City of Chicago*, 856 F.2d 985, 994-95 (7th Cir. 1988).

These and other legal questions are still open for exploration on remand, and nothing in this opinion should be read as a limitation on the district court's authority to resolve them.

**IV**

That leaves two loose ends to tie up. First, the district court correctly concluded that McCullah has failed to allege a policy or practice that can establish municipal liability. We therefore affirm its dismissal of McCullah's § 1983 claim against the City and its police department. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Kujawski v. Bd. of Comm'rs*, 183 F.3d 734, 737 (7th Cir. 1999). Second, although the district court declined to exercise supplemental jurisdiction over McCullah's state-law claims pursuant to 28 U.S.C. § 1367(a), our reinstatement of his Fourth Amendment claim against Officer Gadert under § 1983 will necessarily require the district court to revisit the issue of supplemental jurisdiction on remand.

**V**

For the reasons stated above, we AFFIRM in part and REVERSE in part the judgment of the district court dismissing McCullah's complaint and REMAND for further proceedings consistent with this opinion.

No. 02-2564 13

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*