In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3351

GILBERT LLOVET,

*Plaintiff-Appellant*,

*v.*

CITY OF CHICAGO, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 4923 — **Rubén Castillo**, *Chief Judge*.

ARGUED JULY 9, 2014 — DECIDED AUGUST 1, 2014

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. After being acquitted in a state court of aggravated battery, the plaintiff sued two Chicago police officers and their employer, the City of Chicago, under 42 U.S.C. § 1983 for malicious prosecution. He claimed that the officers had prepared false police reports and used them to persuade a state prosecutor to file a charge of aggravated battery against him. The district court dismissed the plaintiff's suit on the authority of our decision in *Newsome v.*

*McCabe*, 256 F.3d 747, 750–51 (7th Cir. 2001), which holds (as do subsequent cases of ours such as *Avila v. Pappas*, 591 F.3d 552, 553–54 (7th Cir. 2010), and *Gauger v. Hendle*, 349 F.3d 354, 359 (7th Cir. 2003)) that a federal suit for malicious prosecution by state officers is permissible only if the state in which the plaintiff had been prosecuted does not provide an adequate remedy, which (the plaintiff does not deny) Illinois does. See *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996).

The plaintiff asks us to overrule *Newsome*, which he contends both is unsound and has been rejected by most of the other federal courts of appeals; he tells us that "this case provides [this] Court with an opportunity to stop being an outlier circuit." He want us to hold, in direct opposition to the *Newsome* line of cases, that 42 U.S.C. § 1983 authorizes a federal claim of malicious prosecution regardless of what alternative remedy a state provides. He also wants us to hold that the Fourth Amendment's prohibition of seizures of persons without probable cause does not terminate when the person arrested becomes detained pursuant to legal process (normally an arraignment in which a judicial officer determines that there is probable cause to hold him for trial unless he makes bail); and further that a claim, based on the Fourth Amendment, for malicious prosecution "accrues upon the favorable termination of criminal proceedings" and thus does not have to be filed within the statute of limitations for the unlawful arrest.

*Newsome* derives ultimately from the Supreme Court's decision in *Parratt v. Taylor*, 451 U.S. 527 (1981), which held that a claim based on the due process clause of the Fourteenth Amendment is not actionable if the alleged violation was the unauthorized act of a rogue state officer rather than

an application of state law or policy, as long as the state provides an adequate remedy for the wrongful act of its employee. The Court reasoned that the availability of such a state remedy is all the "process" that the victim of such an act is "due." *Albright v. Oliver*, 510 U.S. 266 (1994), applied this principle to due process suits for malicious prosecution: they can be brought under federal law only if there is no adequate state law remedy.

Our plaintiff does not question the derivation of *Newsome* from *Parratt* and *Albright* but argues rather that a federal suit for malicious prosecution can be based on the Fourth Amendment rather than on the due process clause, and that all that the plaintiff has to prove in order to establish a violation of the Fourth Amendment is that he was wrongfully in detention at some point. He argues that other courts of appeals accept this position, citing a passage in our opinion in *Julian v. Hanna*, 732 F.3d 842, 846 (7th Cir. 2013), in which we said that "most federal courts of appeals … [hold] that section 1983 authorizes a federal claim of malicious prosecution regardless of what alternative remedy a state provides, at least if the plaintiff had been seized in the course of the malicious prosecution, which the cases believe justifies grounding the malicious prosecution claim in the Fourth Amendment, thus avoiding the *Parratt* principle. *Pitt v. District of Columbia*, 491 F.3d 494, 510–11 (D.C. Cir. 2007); *Hernandez–Cuevas v. Taylor*, 723 F.3d 91, 99–101 (1st Cir. 2013); *Swartz v. Insogna*, 704 F.3d 105, 111–12 (2d Cir. 2013); *Gallo v. City of Philadelphia*, 161 F.3d 217, 221–22 (3d Cir. 1998); *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012); *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007); *Novitsky v. City of Aurora*, 491 F.3d 1244, 1257–58 (10th Cir. 2007); *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004)."

The "at least" clause ("at least if the plaintiff had been seized"), overlooked by the plaintiff in the present case, is critical. The cited cases hold or assume or imply that if malicious acts by state officers result in a seizure that is unreasonable within the meaning of the Fourth Amendment, the victim can seek relief under 42 U.S.C. § 1983—though it is important to bear in mind, as we had occasion to reiterate in *Scherr v. City of Chicago*, 2014 WL 2958611 (7th Cir. July 2, 2014), that if there is probable cause for a search (or seizure) there is no violation of the Fourth Amendment even if the police acted for improper, malicious reasons.

The court in *Newsome* did not deny that there may be cases in which malicious prosecution resulting in an arrest can be challenged under the Fourth Amendment. "*Newsome* left open the possibility of a Fourth Amendment claim against officers who misrepresent evidence to prosecutors … . Circuit precedent [therefore] did not necessarily prevent Johnson from bringing a Fourth Amendment claim based on Savile's allegedly false report to the State's Attorney and grand jury testimony." *Johnson v. Savile*, 575 F.3d 656, 663–64 (7th Cir. 2009); to the same effect, see, e.g., *Parish v. City of Chicago,* 594 F.3d 551, 554 (7th Cir. 2009); *McCullah v. Gadert*, 344 F.3d 655, 659 (7th Cir. 2003). *McCullah* recognized a Fourth Amendment wrongful-arrest claim against an officer alleged to have given false information in an incident report and at a preliminary hearing. We pointed out that "*Newsome* did have a potential Fourth Amendment claim, but that it could not be pursued because the statute of limitations had run." *Id*. *Newsome* held that the plaintiff could not bring a federal malicious prosecution claim *based on the due process clause of the Fourteenth Amendment*, because his malicious prosecution remedy under state law was adequate to

give him all the due process to which he was entitled. The plaintiff's brief in the present case acknowledges that this is the holding of *Newsome*. The question in this case, which is unrelated to *Newsome*, is whether the plaintiff was seized within the meaning of the Fourth Amendment. If not, his case collapses, regardless of *Newsome*.

When charged with aggravated battery, the plaintiff was already in jail, awaiting trial on a charge of misdemeanor domestic battery against the same person on a different occasion. 720 ILCS 5/12-3.2(b). He doesn't deny that there had been probable cause for his arrest on the misdemeanor charge. Unable to make bail, he was still in jail, awaiting trial on both charges, when he was tried for and acquitted of aggravated battery, whereupon he was released from jail and the misdemeanor charge was dropped. Thus there was no causal relation between the aggravated battery charge that was the result, he alleges (correctly, as we'll assume in this opinion), of malicious acts by the defendant officers, and the deprivation of his liberty by his being arrested and jailed on the misdemeanor charge, a charge that forms no part of his claim of unlawful behavior by the defendants. But he contends that the filing of the aggravated-battery charge suspended his statutory right to a speedy trial on the misdemeanor charge, and as a result he was in jail longer than he would have been had it not been for the defendants' malicious action in framing him for aggravated battery.

Maybe so; but because the initial seizure was supported by probable cause and so did not violate the Fourth Amendment, the fact that the deprivation of liberty lasted longer than it should have, though this might well constitute a deprivation of liberty without due process of law, *Heck v.*

*Humphrey*, 512 U.S. 477, 484 (1994), would not violate the Fourth Amendment. *Hernandez v. Sheahan*, 455 F.3d 772, 777 (7th Cir. 2006). The amendment does not regulate the length of detentions after a judge or magistrate has determined that there is probable cause to detain a person on a criminal charge.

Or so we believe; not all courts agree. Three of the string of eight cases cited in the passage we quoted from our opinion in *Julian v. Hanna* treat malicious protraction of detention as a "continuing seizure," violative of the Fourth Amendment—*Hernandez–Cuevas v. Taylor*, 723 F.3d at 99–100; *Swartz v. Insogna*, 704 F.3d at 112, and *Gallo v. City of Philadelphia*, 161 F.3d at 222–24—as do two Sixth Circuit cases, *Sykes v. Anderson*, 625 F.3d 294, 663–64 (6th Cir. 2009); *Gregory v. City of Louisville,* 444 F.3d 725, 747–51 (6th Cir. 2006), although in light of a subsequent Sixth Circuit case, *Aldini*, cited below, the continued validity of *Sykes* and *Gregory* are in some doubt.

The courts in the cases cited in the preceding paragraph reason that even if a defendant is arrested on probable cause, unless released when he should be the unauthorized continuation of his detention violates the Fourth Amendment. This reasoning, critical to the plaintiff's case, is inconsistent with the Supreme Court's decision in *Heck v. Humphrey*, cited above, which states that "unlike the related cause of action for false arrest or imprisonment, [a suit for malicious prosecution] permits damages for confinement imposed *pursuant to legal process.*" 512 U.S. at 484 (emphasis added). The tort of false arrest is the common law counterpart to an unreasonable seizure, forbidden by the Fourth Amendment; *Wallace v. Kato*, 549 U.S. 384, 389 (2007), holds that "the sort of unlaw-

ful detention remediable by the tort[s] of false imprisonment [and false arrest] is detention *without legal process*" (emphasis in original).

*Heck* and *Wallace* imply that once detention by reason of arrest turns into detention by reason of arraignment—once police action gives way to legal process—the Fourth Amendment falls out of the picture and the detainee's claim that the detention is improper becomes a claim of malicious prosecution violative of due process. If this is right, the doctrine of "continuing seizure" is wrong, as we held for example in *Wiley v. City of Chicago*, 361 F.3d 994, 998 (7th Cir. 2004), which states that our court has "repeatedly rejected the 'continuing seizure' approach," instead holding "that the scope of a Fourth Amendment claim is limited up until the point of arraignment." To the same effect is *Hernandez v. Sheehan*, *supra*, 455 F.3d at 777: "the fourth amendment drops out of the picture following a person's initial appearance in court." Similar decisions in other circuits are *Aldini v. Johnson*, 609 F.3d 858, 866–67 (6th Cir. 2010), and *Taylor v. Waters*, 81 F.3d 429, 436–37 (4th Cir. 1996).

"Continued detention" can mean just that the arrest was wrongful and resulted in the detention of which the plaintiff complains, rather than that a wrongful act committed after the plaintiff had been detained was a separate violation of the Fourth Amendment. The latter is what is alleged in this case; the plaintiff complains of a detention that, because of a new wrong, continued beyond its lawful limits.

A number of decisions reject or at least fail to embrace the "continuing seizure" doctrine in the form pressed by the plaintiff in this case—that an initially lawful detention becomes a Fourth Amendment violation if it lasts longer than it

should. Those decisions include *Evans v. Chalmers*, *supra*, 703 F.3d at 647; *Becker v. Kroll*, 494 F.3d 904, 915–16 (10th Cir. 2007) (and other cases cited in that case); *Pitt v. District of Columbia*, *supra*, 491 F.3d at 499–500, 511; *Fox v. DeSoto*, *supra*, 489 F.3d at 237; *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998); and *Riley v. Dorton*, 115 F.3d 1159, 1162–64 (4th Cir. 1997) (en banc); cf. *Kingsland v. City of Miami*, *supra*, 382 F.3d at 1235–36. *Newsome* is no outlier.

Adoption of the "continuing seizure" doctrine in the form urged by the plaintiff would greatly enlarge the scope of the Fourth Amendment. And to no purpose, for there are abundant legal remedies—including federal remedies—for a state's refusing to release a person who is being unlawfully detained. In *Wolff v. McDonnell*, 418 U.S. 539, 544, 557 (1974), for example, the Supreme Court held that to prolong detention by depriving a state prisoner of good-time credits without proper procedure violates the due process clause of the Fourteenth Amendment. What it does not violate is the Fourth Amendment.

We must consider, however, the plaintiff's alternative argument, a variant of the "continuing seizure" theory, that a *second* seizure (the first being his arrest on the misdemeanor-battery charge) occurred when by filing the aggravated-battery charge the police caused him to be kept in jail beyond the 12-month deadline for the misdemeanor charge. Bail on the aggravated-battery charge was set at $1 million. Unable to make bail in that amount (which would have required him to post a $100,000 bond), the defendant remained in jail past the 12-month deadline for holding him on the lesser charge.

The argument is that the second filing of criminal charges was in effect an arrest, for which probable cause was lacking, and thus an unreasonable seizure. The bracketing of "searches" and "seizures" in the Fourth Amendment, and the fact that more than half the amendment is taken up with specifying limits on warrants, suggest that the core meaning of "seizures" is arrests, or similar acts that impose an immediate physical restraint on a person. There is a difference between seizing a person and not letting him go. The basis of the plaintiff's prolonged detention was the filing of a new charge against him (aggravated battery) after he was already in jail; and withholding a get out of jail card is not an arrest, or any other sort of seizure. When, after the arrest or seizure, a person is not let go when he should be, the Fourth Amendment gives way to the due process clause as a basis for challenging his detention. It's not unusual for new charges to be filed against prisoners that delay their release; it would be odd to think the Fourth Amendment an available basis for challenging the lawfulness of such delays. But that is the plaintiff's claim in this case.

To allow such a claim would enlarge the scope of the Fourth Amendment significantly and complicate its application by giving "arrest" (or "seizure") a new, counterintuitive meaning—and, to repeat our earlier question, to what end? An unlawfully protracted detention is actionable under state law not only as malicious prosecution but also as false imprisonment. If a state fails to provide adequate remedies for such detention, the detention can be challenged as a federal violation of due process, as we explained in *Julian v. Hanna*. But if there is an adequate state remedy, we can't see the purpose of stretching the Fourth Amendment to create a du-

plicative federal remedy. The plaintiff doesn't argue that he didn't have an adequate remedy under state law.

Although we are affirming, we cannot forbear to mention with disapproval the verbosity yet stunted structure of the City of Chicago's brief. The brief, 43 pages long, cites 104 different cases—far too many—yet omits a statement of facts without conceding the accuracy of the plaintiff's fact statement. Considering the City's precarious financial condition, we would have expected greater economy and selectivity in citations—and more facts.

AFFIRMED.