In the

# United States Court of Appeals

## For the Seventh Circuit

No. 03-1762

STEVEN MANNING,

*Plaintiff-Appellee,*

*v.*

GARY MILLER, Federal Bureau of Investigation
Agent, and ROBERT BUCHAN, Federal Bureau
of Investigation Agent,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 372—**Matthew F. Kennelly**, *Judge.*

ARGUED SEPTEMBER 26, 2003—DECIDED JANUARY 21, 2004

Before FLAUM *Chief Judge*, and BAUER and MANION,
*Circuit Judges.*

BAUER, *Circuit Judge.* This case raises the question of
how far immunity extends for Federal Bureau of Investi-
gation (FBI) agents accused of "framing" a defendant.
Steven Manning was tried and convicted for kidnaping
and murder; he later had those convictions overturned.
Manning now brings suit against, among others, the FBI
agents involved in his investigation. The FBI agents,
Buchan and Miller, moved for summary judgment based
on their absolute and qualified immunity from the charges.

The district court denied these motions. Buchan and Miller bring these interlocutory appeals. For the reasons stated below, we affirm.

## I. Background

Manning was employed as a Chicago police officer and later as an FBI informant. In 1986 after Manning ceased to be an informer for the FBI he fell under suspicion for a variety of crimes. These crimes included the 1984 kidnaping of two drug dealers, the 1985 murder of Chuckie English, and the 1990 murder of James Pellegrino. Manning was arrested and tried for the kidnaping charges, found guilty and sentenced, effectively, to life in prison. In 1993 Manning was also charged and convicted of the murder of Pellegrino and sentenced to death. In 1998 Manning's murder conviction was overturned; the prosecutor declined to retry him on that charge. Later, in 2002 Manning's kidnaping conviction was overturned.

Manning states the following, which we take as true for the purposes of this appeal. He contends that these charges were a result of retaliatory action by the FBI taken because he ceased to do work for them as an informer. Although discovery has not yet proceeded, Manning points to several actions taken by Agents Buchan and Miller during the course of their investigations that were done with the intention of "framing" him. Specifically, Manning states that in 1990 Agent Buchan re-opened the kidnaping case after the FBI had closed its investigation in order to frame him for this unsolved crime. During the course of the kidnaping investigation Manning states that the agents conducted a "highly suggestive photographic line-up" to induce a witness to identify him as the perpetrator. (Appellee's Br. at 5). Based solely on this witness's identification of Manning, he was arrested; he was later

tried and, after an initial mistrial, convicted on the kidnaping charges.

When he was arrested for the kidnaping, Manning was placed in a cell with jailhouse informant Tommy Dye. Manning states that Agents Buchan and Miller intentionally chose to use Dye as the informant because they knew Dye had previously falsified information and perjured himself, and hence would be willing to lie about Manning in exchange for a reduction in his sentence. Manning asserts that Buchan and Miller provided Dye with information and details regarding the kidnaping and the murders of Pellegrino and English, and told Dye that they wanted to connect Manning to those crimes.

Dye told the agents that Manning had confessed to the kidnaping and the murder of English. The agents then "wired" Dye and sent him back into the cell with Manning. Dye told the agents that Manning again confessed to the murder of English during an August 24, 1990 conversation, however, the tape of the conversation revealed no such confession. Further, it was physically impossible for Manning to have murdered English as he was in jail at the time of that murder. Undeterred by their initial lack of success, the agents wired Dye for a September 24, 1990 conversation. This time Dye claimed that Manning confessed to the Pellegrino murder. Unfortunately, the tape of the conversation again did not contain this confession; later, Agents Buchan and Miller determined that the recording equipment had malfunctioned and Manning's confession must have occurred during a two-second gap in the recorded conversation.

A description of these confessions was presented to a Cook County grand jury; the grand jury indicted Manning. At trial Dye testified against Manning. Agents Buchan and Miller also testified. Manning was convicted and sentenced to death. Dye later received a reduction in

his sentence by more than half and had other criminal charges against him dropped as a result of his cooperation in this matter.

Manning, now having had these sentences overturned, brings a *Bivens* claim against Agents Buchan and Miller for violation of his constitutional right to a fair trial, and a claim under 42 U.S.C. § 1983 for conspiracy to deprive Manning of his constitutional rights. Buchan and Miller raised the defenses of absolute and qualified immunity and moved for summary judgment. The district court judge denied their motions; Buchan and Miller appeal.

## II. Discussion

We review appeals based on immunity de novo. *Elder v. Holloway*, 510 U.S. 510, 516 (1994). Because discovery has not yet occurred in this case, we will treat the motion as a motion to dismiss, rather than a motion for summary judgment. Accordingly, such a motion should not be granted unless it appears "beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 46 (1957).

### A.  Absolute Immunity

For plaintiffs seeking redress for being "framed" for a crime it is a difficult task to form the complaint. This and other courts have struggled with issues regarding whether an appropriate cause of action exists and how immunity factors in where a claim does exist. In the past, plaintiffs have unsuccessfully styled their "framing" claims as perjury, conspiracy to commit perjury, malicious prosecution, false arrest, and violation of due process rights, among other things. Ultimately, in this case, whether

Agents Buchan and Miller are entitled to absolute immunity depends on how this court allows Manning to characterize his claim. On one hand, Agents Buchan and Miller believe this is merely a dressed-up claim of perjury and conspiracy to commit perjury (and therefore want absolute immunity). On the other hand, Manning characterizes this as a *Brady* claim[1], that is, a claim for the withholding of exculpatory evidence (and claims there is no absolute immunity). The facts of this case are unique, after considering them closely we feel that Manning's claim may properly be brought under *Brady* and the agents are not entitled to absolute immunity.

The law regarding immunity is very fact dependent, and the various facts courts have considered reveal a spectrum of behavior that has ultimately been categorized as immune or not immune. On the end of the spectrum where behavior is solidly considered to be immune from civil liability is perjury. In *Brisco v. LaHue*, the Supreme Court explained that when a witness commits perjury, he or she is granted absolute immunity from civil liability.

---

[1] *Brady v. Maryland*, 373 U.S. 83, (1963) (stating that defendant's due process rights are violated when the defendant requests exculpatory evidence from the prosecutor, and the prosecutor knowingly withholds it). Manning brings this claim against federal investigators under the authority of *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Although this Circuit has not explicitly recognized that *Bivens* may be employed to bring a *Brady* claim, we have recognized that *Bivens* may be used to bring claims for violations of procedural and substantive due process. *See Alejo v. Heller*, 328 F.3d 930 (7th Cir. 2003); *Hoosier Bancorp of Ind. v. Rasmussen*, 90 F.3d 180 (7th Cir. 1996). We have also entertained the use of a *Bivens* cause of action where the plaintiff complains that law enforcement officers created false evidence to be used at trial. *Hammond v. Kunard*, 148 F.3d 692, 694-95 (7th Cir. 1998).

460 U.S. 325, 331-32 (1983). In these instances, immunity is granted to encourage witnesses to testify fully without fear of recrimination for his or her role in the proceedings. *Id.* at 332-33. Further, when police officers testify as witnesses, they have the same protections. *Id.* at 340.[2]

Within this Circuit, we have considered variations on the holding in *Briscoe*, finding that some, but not all perjury claims merit absolute immunity. In *House v. Belford*, we held that both a witness and a prosecutor are immune from civil liability when they "conspire" together to commit perjury—that is, when the prosecutor knows a witness will lie on the stand. 956 F.2d 711, 720 (7th Cir. 1992). Conversely, in *Newsome v. McCabe*, we declined to extend immunity to non-witnesses who assisted in the preparation of another's testimony.[3]

On the other end of the spectrum are cases where prosecutors withhold exculpatory evidence; in these cases they are not immune. We examined this issue in *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001). *Newsome* involved a claim by a plaintiff that the police should be liable for their failure to alert the prosecutor to the fact that the fingerprints from the crime scene did not match Newsome's, and that the police encouraged witnesses to pick him out of a line-up. *Id.* at 749. Newsome brought actions for "malicious prosecution." *Id.* The court dismissed the immediate malicious prosecution claim. *Id.* at 750; *see also McCullah v. Gadert*, 344 F.3d 655, 657 (7th

---

[2] Such immunity also applies to judges and attorneys who are "integral parts of the judicial process." *Id.* at 335.

[3] "Now [the defendant] contends that testimonial immunity should be extended to non-witnesses who assisted in the testimony's preparation. We rejected that extension in *Ienco v. Chicago* . . . and see no reason to revisit that issue . . . ." *Newsome v. McCabe*, 319 F.3d 301, 304 (7th Cir. 2003).

Cir. 2003). In the alternative, the court considered that Newsome might have framed his argument as a *Brady* claim for withholding of exculpatory evidence. The court considered this in light of the detective's claim for *qualified* immunity and held that Newsome could proceed with a *Brady* claim uninhibited by qualified immunity. *Newsome*, 256 F.3d at 751-52. Similarly, in *Ienco v. City of Chicago*, plaintiff-Ienco filed a *Brady* claim against Chicago police officers for withholding exculpatory evidence and lying to prosecutors. We held that whether a true *Brady* claim existed was a question for the district court, but the officers were not entitled to *absolute* immunity.[4]

Recently, we ruled on one additional case that touched briefly on this issue. In *Gauger v. Hendle*, the plaintiff sued county detectives for providing a false account of his interrogation. 349 F.3d 354, 358 (7th Cir. 2003). We considered the merits of Gauger's claims of perjury, false arrest, and *Brady* violations in light of the recent *Newsome* decision. Regarding the *Brady* claim, we did not address immunity, but determined that Gauger's claim fell outside of *Brady* since Gauger was present during his interrogation and hence the prosecution was not withholding any information from him, they were simply providing false testimony.

In light of these cases, it falls upon us to determine whether Manning's claim is a true *Brady* claim or merely a dressed-up claim for conspiracy to commit perjury. The FBI agents are correct when they assert that part of Manning's claim is based on the perjury of Dye, Buchan and Miller. Indeed, without this testimony it is doubtful that

---

[4] There we stated, "[n]either the withholding of exculpatory information nor the initiation of constitutionally infirm criminal proceedings is protected by absolute immunity." *Ienco v. City of Chicago*, 286 F.3d 994, 1000 (7th Cir. 2002).

Manning would have been convicted. However Manning's allegations in this case go beyond the perjury or even the conspiracy between the agents and Dye to commit perjury. Specifically, Manning points to actions taken over the course of years that set the stage for his trial; the timing of some of these claimed actions well before trial lends some credence to Manning's theory that this behavior goes beyond perjury.[5] Such actions included inducing a witness to falsely identify Manning in a line-up, selecting Dye to be the jailhouse informant,[6] and inducing Dye to create a false story. Manning argues that the agents failed to tell prosecutors that they had done these things. Further, Manning believes the agents created and submitted false written reports stating that Manning had confessed when they knew he had not,[7] and destroyed or tampered with the physical evidence, namely the tapes of the purported confessions. Unlike *House*'s conspiracy to commit perjury fact pattern, here we are dealing with investigators creating false evidence rather than a prosecu-

---

[5] *See McCullah v. Gadert*, 344 F.3d 655, 661 (7th Cir. 2003) (considering that the distinguishing factor between perjury and withholding of exculpatory evidence could be the proximity of the government agent's behavior to trial).

[6] In *Jones v. City of Chicago*, 856 F.2d 985, 995 (7th Cir. 1988) we noted that "information undermining the credibility of a government witness is within the scope of Brady's rule."

[7] Appellee's Brief states,

> Some of Miller's reports went beyond what Dye reported to him . . . . On August 24, 1990, for example, Miller created a written '302 Report' stating falsely that Manning had supposedly confessed to Dye about having committed all three crimes referenced above even though Dye did not in fact report any confession to Miller about the Pellegrino Murder.

Appellee's Br. at 6.

tor examining a witness. The facts here closely resemble those in *Ienco* where the plaintiff complained of *both* perjury and withholding of evidence that would have revealed the search and seizure to be unlawful. The fact that Ienco complained of perjury does not foreclose his *Brady* claim. The court addressed this issue and explained, "no absolute testimonial immunity attaches to the actions of the officers outside of trial." *Ienco*, 286 F.3d at 1000.

Agents Buchan and Miller worry that permitting Manning to style his cause of action as a *Brady* claim rather than a perjury claim will "perform an effective end run around" testimonial immunity. (Appellant's Br. at 23). We agree that in some cases it may be hard to distinguish the two.[8] However, in this case Manning is accusing the agents of behavior that goes well beyond testimony given at trial. Additionally, while we must certainly be careful not to diminish testimonial immunity, we must also be cautious of eroding the viability of *Brady* claims. Considered from a different view, one could argue that appellants ask us to create a rule that would eliminate the availability of *Brady* claims any time perjury is involved. In short, based on the specific facts of this case, we believe that Manning has presented a *Brady* claim and as such, Agents Buchan and Miller do not have absolute immunity. Whether Manning will ultimately succeed will depend on the merits of his *Brady* claim.

## B.  Qualified Immunity

In the alternative, Buchan and Miller believe they should not have to go forward with this trial based on a

---

[8] *See Imbler v. Pachtman*, 424 U.S. 409, 431 n. 34 (1976) (discussing the difficulty of differentiating claims against prosecutors for perjury and withholding exculpatory evidence).

claim of qualified immunity. In determining whether a public official is entitled to qualified immunity, we make a two-prong inquiry. First, we determine whether Manning has asserted a violation of a constitutional right, and second, we look to see whether that right was "clearly established" at the time it was violated. *Delaney v. DeTella*, 256 F.3d 679, 682 (7th Cir. 2001); *Wilson v. Layne*, 526 U.S. 603, 609-10 (1999).

The first prong of this inquiry is easily satisfied. Through his *Brady* claim, Manning has alleged a violation of a constitutional right, specifically, his due process right to a fair trial. *Brady*, 373 U.S. at 87. Buchan and Miller argue that, because he was already incarcerated at the time of his murder conviction, Manning has not suffered a deprivation of his liberty; without such a loss, Manning cannot assert a due process violation. This reasoning is flawed. First, the due process violation occurred when Manning was deprived his right to a fair trial, it cannot be circumvented simply because he was serving time on another sentence at that time. Second, as a result of Manning's murder conviction, he was sentenced to death—a penalty different from and more serious than life in prison. We have held that the threat of impending death can cause considerable mental anguish, and as such, deprive a person of liberty. *See Wilkins v. May*, 872 F.2d 190, 195 (7th Cir. 1989) (considering a liberty infringement when plaintiff was held at gunpoint). Finally, in addition to complaining about Buchan and Miller's improper involvement in the murder case, Manning also complains about their involvement in the kidnaping case, for which, incidently Manning was serving the prison sentence. For these various reasons, Manning has a clearly stated claim for a violation of his constitutional rights.

Buchan and Miller also argue that *Brady* should not be extended to cover the actions of police or investigators, but rather, only prosecutors. This assertion, while elo-

quently argued, is flatly contradicted by existing case law. In *Kyles v. Whitley*, the Supreme Court found that the *Brady* duty of turning over exculpatory evidence includes not only the prosecutor, but the investigating officers as well. 514 U.S. 419, 438 (1995). Similarly, although previously established in the Seventh Circuit, our recent *Newsome* decision reiterates the same rule. *Newsome v. McCabe*, 260 F.3d 824, 824 (7th Cir. 2001) (noting, "police who deliberately withhold exculpatory evidence, and thus prevent the prosecutors from complying with the obligations articulated in *Brady*, violate the due process clause.").

Similarly, Manning is able to meet the second prong of the qualified immunity test: his constitutional due process right was "clearly established" at the time he asserts it was violated. Buchan and Miller assert that this behavior was not clearly prohibited at the time of its occurrence because no decision had dealt with a *Brady* claim that matched the facts in Manning's *Brady* claim. Following this logic, all *Brady* violations would receive qualified immunity because the facts of every case are unique. Instead, we hold that it is enough that, prior to the actions that gave rise to this case, it was well established that investigators who withhold exculpatory evidence from defendants violate the defendant's constitutional due process right. *See, e.g.*, *United States ex rel. Smith v. Fairman*, 769 F.2d 386, 391 (7th Cir. 1985). It is immaterial whether Manning complains that Agents Buchan and Miller withheld exculpatory information regarding fabricated testimony or fingerprint analysis.

Because Manning is able to show that he is asserting a violation of a constitutional right and that the right was clearly established at that time, Agents Buchan and Miller cannot prevail on their qualified immunity claim.

For the above stated reasons, we AFFIRM.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*