Justice THOMAS, dissenting.
I join Justice ALITO's opinion in full but write separately regarding the accrual date for a Fourth Amendment unreasonable-seizure claim. Justice ALITO suggests that a claim for unreasonable seizure based on a warrantless arrest might not accrue until the "first appearance" under Illinois law (or the "initial appearance" under federal law)-which ordinarily represents the first judicial determination of probable cause for that kind of arrest-rather than at the time of the arrest. See post, at 923, 927 (dissenting opinion); see also Wallace v. Kato, 549 U.S. 384, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (taking a similar approach). Which of those events is the correct one for purposes of accrual makes no difference in this case, because both the arrest and the first appearance occurred more than two years before petitioner filed suit. See ante, at 916; see also Wallace, supra, at 387, 127 S.Ct. 1091 (petitioner's claim was untimely regardless of whether it accrued on day of arrest or first appearance).
I would leave for another case (one where the question is dispositive) whether *923 an unreasonable-seizure claim would accrue on the date of the first appearance if that appearance occurred on some day after the arrest. I think the answer to that question might turn on the meaning of "seizure," rather than on the presence or absence of any form of legal process. See post, at 926 - 927 (describing the ordinary meaning of "seizure").
Justice ALITO, with whom Justice THOMAS joins, dissenting.
I agree with the Court's holding up to a point: The protection provided by the Fourth Amendment continues to apply after "the start of legal process," ante, at 913, if legal process is understood to mean the issuance of an arrest warrant or what is called a "first appearance" under Illinois law and an "initial appearance" under federal law. Ill. Comp. Stat., ch. 725, §§ 5/109-1(a), (e) (West Supp. 2015) ; Fed. Rule Crim. Proc. 5. But if the Court means more-specifically, that new Fourth Amendment claims continue to accrue as long as pretrial detention lasts-the Court stretches the concept of a seizure much too far.
What is perhaps most remarkable about the Court's approach is that it entirely ignores the question that we agreed to decide, i.e., whether a claim of malicious prosecution may be brought under the Fourth Amendment. I would decide that question and hold that the Fourth Amendment cannot house any such claim. If a malicious prosecution claim may be brought under the Constitution, it must find some other home, presumably the Due Process Clause.
I
The question that was set out in Manuel's petition for a writ of certiorari and that we agreed to decide is as follows:
"[W]hether an individual's Fourth Amendment right to be free from unreasonable seizure continues beyond legal process so as to allow a malicious prosecution claim based upon the Fourth Amendment . This question was raised, but left unanswered, by this Court in Albright v. Oliver, 510 U.S. 266 [114 S.Ct. 807, 127 L.Ed.2d 114] (1994). Since then, the First, Second, Third, Fourth, Fifth, Sixth, Ninth, Tenth, Eleventh, and D.C. Circuits have all held that a Fourth Amendment malicious prosecution claim is cognizable through 42 U.S.C. § 1983 (" Section 1983"). Only the Seventh Circuit holds that a Fourth Amendment Section 1983 malicious prosecution claim is not cognizable." Pet. for Cert. i (emphasis added).
The question's reference to "a malicious prosecution claim" was surely no accident. First, the conflict on the malicious prosecution question was the centerpiece of Manuel's argument in favor of certiorari.[1]
*924 Second, unless Manuel is given the benefit of the unique accrual rule for malicious prosecution claims, his claim is untimely, and he is not entitled to relief.
A
I would first consider what I take to be the core of the question presented-whether a "malicious prosecution claim may be brought under the Fourth Amendment." See ibid. Manuel asked us to decide that question because it may be critical to his ultimate success in this lawsuit. Why is that so?
The statute of limitations for Manuel's claim is Illinois's general statute of limitations for personal-injury torts, see Wallace v. Kato, 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007), which requires suit to be brought within two years of the accrual of the claim, see Ill. Comp. Stat., ch. 735, § 5/13-202 (West 2010). Here is the chronology of relevant events in this case:
• March 18, 2011: Manuel is arrested and brought before a county court judge, who makes the required probable-cause finding because Manuel was arrested without a warrant.
• March 31, 2011: Manuel is indicted by a grand jury.
• April 8, 2011: Manuel is arraigned.
• May 4, 2011: An assistant state's attorney moves to dismiss the charges, and the motion is granted.
• May 5, 2011: Manuel is released from jail.
• April 22, 2013: Manuel files his complaint.
Since the statute of limitations requires the commencement of suit within two years of accrual, Manuel's claim is untimely unless it accrued on or after April 22, 2011. And the only events in the above chronology that occurred within that time frame are the dismissal of the charge against him and his release from custody. A claim of malicious prosecution "does not accrue until the criminal proceedings have terminated in the plaintiff's favor." Heck v. Humphrey, 512 U.S. 477, 489, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) ; see 3 Restatement (Second) of Torts § 653 (1976). None of the other common-law torts to which Manuel's claim might be compared-such as false arrest or false imprisonment-has such an accrual date. See Wallace, supra, at 397, 127 S.Ct. 1091 *925 (holding that a claim for false imprisonment under the Fourth Amendment accrues when "the claimant becomes detained pursuant to legal process"). Therefore, if Manuel's case is to go forward, it is essential that his claim be treated like a malicious prosecution claim.
B
Although the Court refuses to decide whether Manuel's claim should be so treated, the answer to that question-the one that the Court actually agreed to review-is straightforward: A malicious prosecution claim cannot be based on the Fourth Amendment.
"The first inquiry in any § 1983 suit," the Court has explained, is "to isolate the precise constitutional violation with which [the defendant] is charged." Baker v. McCollan, 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). In this case, Manuel charges that he was seized without probable cause in violation of the Fourth Amendment. In order to flesh out the elements of this constitutional tort, we must look for "tort analogies." Wilson v. Garcia, 471 U.S. 261, 277, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Manuel says that the appropriate analog is the tort of malicious prosecution, so we should look to the elements of that tort.
To make out a claim for malicious prosecution, a plaintiff generally must show three things: (1) "that the criminal proceeding was initiated or continued by the defendant without 'probable cause,' " W. Keeton, D. Dobbs, P. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 876 (5th ed. 1984) (Prosser and Keeton) (emphasis added), (2) "that the defendant instituted the proceeding 'maliciously,' " id., at 882, and (3) that "the proceedings have terminated in favor of the accused," 3 Restatement (Second) of Torts § 653(b) ; see also Heck, supra, at 489, 114 S.Ct. 2364.
There is a severe mismatch between these elements and the Fourth Amendment. First, the defendants typically named in Fourth Amendment seizure cases-namely, law enforcement officers-lack the authority to initiate or dismiss a prosecution. See Prosser and Keeton 876. That authority lies in the hands of prosecutors. A law enforcement officer, including the officer responsible for the defendant's arrest, may testify before a grand jury, at a preliminary examination, see Ill. Comp. Stat., ch. 725, §§ 5/109-3(b), 5/109-3.1(b) (West 2010), or hearing, see Fed. Rule Crim. Proc. 5.1, and at trial. But when that occurs, the officer is simply a witness and is not responsible for "the decision to press criminal charges." Rehberg v. Paulk, 566 U.S. 356, 371, 132 S.Ct. 1497, 182 L.Ed.2d 593 (2012).
Second, while subjective bad faith, i.e., malice, is the core element of a malicious prosecution claim, it is firmly established that the Fourth Amendment standard of reasonableness is fundamentally objective. See Ashcroft v. al-Kidd, 563 U.S. 731, 736, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). These two standards-one subjective and the other objective-cannot co-exist. In some instances, importing a malice requirement into the Fourth Amendment would leave culpable conduct unpunished. An officer could act unreasonably, thereby violating the Fourth Amendment, without even a hint of bad faith. In other cases, the malice requirement would cast too wide a net. An officer could harbor intense personal ill will toward an arrestee but still act in an objectively reasonable manner in carrying out an arrest.
Finally, malicious prosecution's favorable-termination element makes no sense when the claim is that a seizure violated the Fourth Amendment. The Fourth Amendment, after all, prohibits all unreasonable seizures-regardless of whether a *926 prosecution is ever brought or how a prosecution ends. A "Fourth Amendment wrong" "is fully accomplished," United States v. Calandra, 414 U.S. 338, 354, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), when an impermissible seizure occurs. The Amendment is violated and the injury is inflicted no matter what happens in any later proceedings.
Our cases concerning Fourth Amendment claims brought under 42 U.S.C. § 1983 prove the point. For example, we have recognized that there is no favorable-termination element for a Fourth Amendment false imprisonment claim. See Wallace, 549 U.S., at 389-392, 127 S.Ct. 1091.[2] An arrestee can file such a claim while his prosecution is pending-and, in at least some situations-will need to do so to ensure that the claim is not time barred. See id., at 392-395, 127 S.Ct. 1091. By the same token, an individual may seek damages for pretrial Fourth Amendment violations even after a valid conviction . For example, in Haring v. Prosise, 462 U.S. 306, 308, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), the respondent pleaded guilty to a drug crime without raising any Fourth Amendment issues. He then brought a § 1983 suit, challenging the constitutionality of the search that led to the discovery of the drugs on which his criminal charge was based. The Court held that respondent's suit could proceed-despite his valid conviction. Id., at 323, 103 S.Ct. 2368 ; see also Heck, 512 U.S., at 487, n. 7, 114 S.Ct. 2364 ("[A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction").
The favorable-termination element is similarly irrelevant to claims like Manuel's. Manuel alleges that he was arrested and held based entirely on falsified evidence. In such a case, it makes no difference whether the prosecution was eventually able to gather and introduce legitimate evidence and to obtain a conviction at trial. The unlawful arrest and detention would still provide grounds for recovery. Accordingly, there is no good reason why the accrual of a claim like Manuel's should have to await a favorable termination of the prosecution.
For all these reasons, malicious prosecution is a strikingly inapt "tort analog[y]," Wilson, 471 U.S., at 277, 105 S.Ct. 1938 for Fourth Amendment violations. So the answer to the question presented in Manuel's certiorari petition is that the Fourth Amendment does not give rise to a malicious prosecution claim, and this means that Manuel's suit is untimely. I would affirm the Seventh Circuit on that basis.
II
Instead of deciding the question on which we granted review, the Court ventures in a different direction. The Court purports to refrain from deciding any issue of timeliness, see ante, at 919, but the Court's opinion is certain to be read by some to mean that every moment of pretrial confinement without probable cause constitutes a violation of the Fourth Amendment. And if that is so, it would seem to follow that new Fourth Amendment claims continue to accrue as long as the pretrial detention lasts.
A
That proposition-that every moment in pretrial detention constitutes a "seizure"- *927 is hard to square with the ordinary meaning of the term. The term "seizure" applies most directly to the act of taking a person into custody or otherwise depriving the person of liberty. It is not generally used to refer to a prolonged detention. Dictionary definitions from around the time of the adoption of the Fourth Amendment define the term "seizure" as a single event-and not a continuing condition. See, e.g., 2 N. Webster, An American Dictionary of the English Language 67 (1828) (Webster) (defining "seizure" as "the act of laying hold on suddenly"); 1 S. Johnson, A Dictionary of the English Language (6th ed. 1785) (defining "seizure" as "the act of taking forcible possession"); 1 T. Dyche & W. Pardon, A New General English Dictionary (14th ed. 1771) (defining "seize" as "to lay or take hold of violently or at unawares, wrongfully, or by force"). As the Court has explained before, "[f]rom the time of the founding to the present, the word 'seizure' has meant a 'taking possession.' " California v. Hodari D., 499 U.S. 621, 624, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (quoting 2 Webster 67). And we have cautioned against "stretch[ing] the Fourth Amendment beyond its words and beyond the meaning of arrest." 499 U.S., at 627, 111 S.Ct. 1547. The Members of Congress who proposed the Fourth Amendment and the State legislatures that ratified the Amendment would have expected to see a more expansive term, such as "detention" or "confinement," if a Fourth Amendment seizure could be a long event that continued throughout the entirety of the pretrial period.
In my view, a period of detention spanning weeks or months cannot be viewed as one long, continuing seizure, and a pretrial detainee is not "seized" over and over again as long as he remains in custody.[3] Of course, the damages resulting from an unlawful seizure may continue to mount during the period of confinement caused by the seizure, but no new Fourth Amendment seizure claims accrue after that date.[4] Thus, any possible Fourth Amendment claim that Manuel could bring is time barred.
B
The Court is mistaken in saying that its decision "follows from settled precedent." Ante, at 914. The Court reads Albright v. 
*928 Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), to mean that the Fourth Amendment can be violated "when legal process itself goes wrong," ante, at 918, but the accuracy of that interpretation depends on the meaning of "legal process." The Court's reading is correct if by "legal process" the Court means a determination of probable cause at a first or initial appearance. See Ill. Comp. Stat., ch. 725, § 5/109-1 (West Supp.2015) ; Fed. Rule Crim. Proc. 5(b). When an arrest warrant is obtained, the probable-cause determination is made at that time, and there is thus no need for a repeat determination at the first or initial appearance. But when an arrest is made without a warrant, the arrestee, generally within 48 hours, must be brought before a judicial officer, County of Riverside v. McLaughlin, 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), who then completes the arrest process by making the same determination that would have been made as part of the warrant application process. See Ill. Comp. Stat., ch. 725, §§ 5/109-1(a), (b) ; Fed. Rule Crim. Proc. 4(a), 5(b). Thus, this appearance is an integral part of the process of taking the arrestee into custody and easily falls within the meaning of the term "seizure." But other forms of "legal process," for example, a grand jury indictment or a determination of probable cause at a preliminary examination or hearing, do not fit within the concept of a "seizure," and the cases cited by the Court do not suggest otherwise.
Take Albright first. A detective named Oliver procured a warrant for the arrest of Albright for distributing a "look-alike" substance. See Albright v. Oliver, 975 F.2d 343, 344 (C.A.7 1992). The warrant was based on information given to Oliver by the purchaser of the substance. Ibid . After learning of the warrant, Albright turned himself in, was booked, and was released on bond. Ibid . Oliver testified at what Illinois calls a preliminary examination and apparently related the information provided by the alleged purchaser. Ibid. The judge found probable cause, but the charges were later dismissed. Ibid. According to the Seventh Circuit, probable cause was sorely lacking, id ., at 345, and Albright sued Oliver under 42 U.S.C. § 1983, claiming that Oliver had violated his substantive due process right not to be prosecuted without probable cause. All that this Court held was that Albright's claim had to be analyzed under the Fourth Amendment, not substantive due process.
The Court now reads Albright to mean that a Fourth Amendment seizure continues "after the start of 'legal process," but three forms of what might be termed "legal process" were issued in Albright : the arrest warrant, the order releasing him on bond after his first appearance, and the order holding him over for trial after the preliminary examination. I agree that Albright's seizure did not end with the issuance of the warrant (that would be ridiculous since he had not even been arrested at that point) or the first appearance, see ante, at 918 - 919, and n. 6, but it is impossible to read anything more into the holding in Albright . The terse plurality opinion joined by four Justices said no more; the opinion of Justice Scalia, who joined the plurality opinion, referred only to Albright's "arrest," 510 U.S., at 275, 114 S.Ct. 807 (concurring opinion); and Justices KENNEDY and THOMAS, who concurred in the judgment, did so only because Albright's "allegation of arrest without probable cause must be analyzed under the Fourth Amendment." Id ., at 281, 114 S.Ct. 807 (KENNEDY, J., concurring in the judgment). To read anything more into Albright is to adopt the position taken by just one Member of the plurality, see *929 id., at 279, 114 S.Ct. 807 (GINSBURG, J., concurring) (seizure continues throughout the period of pretrial detention), and the two Justices in dissent, see id ., at 307, 114 S.Ct. 807 (Stevens, J., dissenting) (same).
The other precedent on which the Court relies, Gerstein, goes no further than Albright . All that the Court held in Gerstein was that if there is no probable-cause finding by a neutral magistrate before an arrest, there must be one after the arrest. 420 U.S., at 111-116, 95 S.Ct. 854. The Court reasoned that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." Id., at 114, 95 S.Ct. 854. The Court said nothing about whether a claim for a seizure in violation of the Fourth Amendment could accrue after an initial appearance.
The Court thus is forced to rely on dicta-taken out of context-from Gerstein . For example, the Court cites Gerstein 's statement that "[t]he Fourth Amendment was tailored explicitly for the criminal justice system," and that it "always has been thought to define the 'process that is due' for seizures of person[s] ... in criminal cases, including the detention of suspects pending trial." Id., at 125, n. 27, 95 S.Ct. 854. This statement hardly shows that a Fourth Amendment seizure continues throughout a period of pretrial detention, and the Court does not mention the very next sentence in Gerstein -which suggests that the Fourth Amendment might govern "only the first stage" of a prosecution, eventually giving way to other protections that are also part of our "elaborate system, unique in jurisprudence, designed to safeguard the rights of those accused of criminal conduct." Ibid. (emphasis deleted). In the end, Gerstein stands for the proposition that the Fourth Amendment requires a post-arrest probable cause finding by a neutral magistrate; it says nothing about whether the Fourth Amendment extends beyond that or any other "legal process."
* * *
A well-known medical maxim-"first, do no harm"-is a good rule of thumb for courts as well. The Court's decision today violates that rule by avoiding the question presented in order to reach an unnecessary and tricky issue. The resulting opinion will, I fear, inject much confusion into Fourth Amendment law. And it has the potential to do much harm-by dramatically expanding Fourth Amendment liability under § 1983 in a way that does violence to the text of the Fourth Amendment. I respectfully dissent.

The Court defends this evasion on the ground that it is resolving "the one and only Circuit split involving the decision below." Ante, at 922, n. 10. That is flatly wrong. As the Seventh Circuit acknowledged, its decision in this case and an earlier case on which the decision here relied, Newsome v. McCabe, 256 F.3d 747 (2001), conflict with decisions of other circuits holding that a malicious prosecution claim may be brought under the Fourth Amendment. The decision below states: "Manuel argues that we should reconsider our holding in Newsome and recognize a federal claim for malicious prosecution under the Fourth Amendment regardless of the available state remedy. By his count, 10 other Circuits have recognized federal malicious-prosecution claims under the Fourth Amendment." 590 Fed.Appx. 641, 643 (C.A.7 2015). The court refused to overrule Newsome and said that "Manuel's argument is better left for the Supreme Court." Ibid.
Manuel's petition for a writ of certiorari repeatedly made the same point. See Pet. for Cert. 2 ("The Seventh Circuit stands alone among circuits in not allowing a federal malicious prosecution claim grounded on the Fourth Amendment"); id., at 10 ("Ten Federal Circuits Correctly Hold That Malicious Prosecution is Actionable as a Fourth Amendment, Section 1983 Claim"); ibid. ("[E]ight circuits have held that malicious prosecution is cognizable through a Section 1983 Fourth Amendment claim"). All of the decisions that are cited as being in conflict with the decision below involved malicious prosecution claims and are described as such. See id., at 10-11.
It is certainly true that the question whether a malicious prosecution claim may be brought under the Fourth Amendment subsumes the question whether a Fourth Amendment seizure continues past a first or initial appearance, but answering the latter question does not by any means resolve the Circuit split that Manuel cited and that we took this case to resolve. Suppose that the Seventh Circuit were to hold on remand that a Fourth Amendment seizure may continue up to the date when trial begins but no further. Such a holding would be consistent with the Court's holding in this case, but there would still be a conflict between Seventh Circuit case law and the decisions of other Circuits (on which Manuel relied, see ibid. ), holding that a standard malicious prosecution claim (which requires a termination favorable to the defendant) may be brought under the Fourth Amendment. See, e.g., Hernandez-Cuevas v. Taylor, 723 F.3d 91, 99 (C.A.1 2013) ; Manganiello v. New York, 612 F.3d 149, 160-161 (C.A.2 2010) ; McKenna v. Philadelphia, 582 F.3d 447, 461 (C.A.3 2009) ; Evans v. Chalmers, 703 F.3d 636, 647 (C.A.4 2012) ; Sykes v. Anderson, 625 F.3d 294, 308 (C.A.6 2010) ; Grider v. Auburn, 618 F.3d 1240, 1256 (C.A.11 2010).

In Wallace, the Court noted that "[f]alse arrest and false imprisonment overlap" and decided to "refer to the two torts together as false imprisonment." 549 U.S., at 388-389, 127 S.Ct. 1091.

By the Court's logic, there is no apparent reason why even a judgment of conviction should cut off the accrual of new Fourth Amendment claims based on the use of fabricated evidence. The Court writes that "[n]othing in the nature of the legal proceeding establishing probable cause makes a difference for purposes of the Fourth Amendment." Ante, at 920, n. 8. "[I]f the proceeding is tainted-as here, by fabricated evidence-and the result is that probable cause is lacking," the Court continues, "then the ensuing pretrial detention violates the confined person's Fourth Amendment rights, for all the reasons we have stated." Ibid. Although the Court inserts the word "pretrial" in this sentence, its logic provides no reason for that limitation. If a Fourth Amendment seizure continues as long as a person is detained, there is no reason why incarceration after conviction cannot be regarded as a continuing seizure. The Court asserts that the Fourth Amendment "drops out of the picture" after trial, ibid., but it does not explain why this is so. There are facilities that house both pretrial detainees and prisoners serving sentences. If a detainee is transferred following conviction from the section for detainees to the section for prisoners, does the transfer render this person "unseized"?

There is authority for the proposition that a grand jury indictment or a determination of probable cause after an adversary proceeding may be an intervening cause that cuts off liability for an unlawful arrest. See Wallace v. Kato, 549 U.S. 384, 390, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) ; Prosser and Keeton 885. I would not decide that question here.